25 C.C.P.A.(Patents)

## J. GREENEBAUM TANNING CO. v. RESPRO, Inc.

### Patent Appeal No. 3894.

Court of Customs and Patent Appeals.
Feb. 28, 1938.

LENROOT, Associate Judge, dissenting.

———◆———

Lester L. Sargent, of Washington, D. C., for appellant.

Roberts, Cushman & Woodberry, of Boston, Mass., and Cushman, Darby & Cushman, of Washington, D. C. (Charles D. Woodberry and Robert L. Thompson, both of Boston, Mass., and Arlon V. Cushman, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from a decision of the Commissioner of Patents sustaining an opposition by Respro, Inc., to an application by Greenebaum Tanning Company for the registration of a trade-mark. The decision of the Commissioner reversed the decision of the Examiner of Interferences who had dismissed the opposition and adjudged right of registration to the applicant.

The Examiner of Interferences tersely stated the issue, together with descriptions of the opposing marks and of the goods of the respective parties, as follows:

"In the notice of opposition the confusion-in-trade clause of Section 5 is relied upon by the opposer as the sole ground for negativing the right of registration claimed by the applicant.

"The opposer has pleaded ownership of three registrations granted prior to the earliest date of use to which the applicant is herein entitled, for the marks 'Tufsta', 'Tufskim' and 'Tuflex'. The stipulated testimony discloses that these marks are used upon artificial leather or leather substitute sold in competition with genuine leather to manufacturers of boots and shoes, portfolios, wallets, and the like.

"The applicant's mark comprises a rather fanciful design including a plurality of continuous octagonal figures which mutually overlap in such manner as to form a four-pointed star within the periphery of each of such figures. These overlapping portions of the adjacent figures each form a diamond-shaped outline wherein is imprinted the notation 'Tufdri'. The word 'Leather' is duplicated in each star of this design in the shape of a cross. A field of dots appearing in each diamond-shaped outline gives the effect of a circular background within the extremities of each star. The applicant has disclaimed the notations 'Tufdri' and 'Leather' apart from the mark, these notations being merely descriptive of the goods of the latter. These goods are described in the application herein involved as leather, which the evidence shows to be used exclusively for outer soles for shoes."

In view of the simplicity of the issue of the case, we do not regard extensive discussion necessary.

One of the contentions on the part of appellant relates to differences in the specific character of the goods. It is said that appellant's goods are all leather, relatively heavy, and used only for leather soles, while the goods of appellee are artificial leather made of rubber and fabric and are not used for soles.

Appellant's application was amended a number of times before being passed to

publication and does not appear in the record in its finally amended form, but, as best we can determine, it is not limited to use on sole leather, but might be applied to all leather. Furthermore, it appears from the stipulation as to testimony that artificial leathers, marketed by appellee under its "Tuflex" mark, are used, some for "innersoles for shoes," and others for "outersoles for children's and sport shoes, particularly bowler's shoes." Also, it appears from the stipulation that the type of leather marked "Tufsta" is used principally by manufacturers of boots and shoes in making various parts. Such parts are detailed and the stipulation states: "That in all of said uses. Opposer's said artificial leather competes directly with leather."

Without further pursuing the differences and similarities of the respective goods, we content ourselves with pointing out that obviously they are of the same general class and possess the same descriptive properties in the sense of the Trade-Mark Registration Act, as amended, 15 U.S.C.A. § 81 et seq.

■ It remains only necessary to compare the marks. For the purposes of making this comparison, the fact that appellant disclaimed the words "Tufdri" and "Leather" apart from the mark as shown does not affect the issue. As is pointed out in the decision of the Commissioner, this court, in the case of Tetley & Co., Inc., v. Bay State Fishing Co., 82 F.2d 299, 301, 23 C.C.P.A., Patents, 969, said: "We come next to a consideration of the respective marks of the parties. These marks are 'Budget Special' and 'Tetley Budget Tea.' While the words 'Special' in the one mark, and 'Tea' in the other, are disclaimed, these words, of course, will appear in the mark as used, and the mark must be considered as a whole." See, also, California Cyanide Co. v. American Cyanamid Co., 40 F.2d 1003, 17 C.C.P.A., Patents, 1198, and Trustees for Arch Preserver Shoe Patents v. James McCreery & Co., 49 F.2d 1068, 18 C.C.P.A., Patents, 1507.

■ So, the question here is, Would the application of appellant's composite mark to goods of the same descriptive properties as those to which appellee's marks are applied "be likely to cause confusion or mistake in the mind of the public or to deceive purchasers"?

We find ourselves in agreement with the view of the commissioner expressed in the following terms: "* * * I think there is at least a reasonable probability that confusion in the mind of the public would result from their concurrent use on the goods of the parties. It is true that applicant's mark is a composite one having certain design features in addition to the words 'Tufdri' and 'Leather,' while opposer's marks consist of the mere words 'Tufsta,' 'Tufskim' and 'Tuflex;' but the design features cannot be spoken, and applicant's product would necessarily be known to the trade as 'Tufdri' leather. It is also true that the goods of the parties are not identical, but in view of their conjoint use in the manufacture of shoes I doubt that the slight difference in their specific properties is of material importance."

In the briefs for the respective parties many cases are cited involving marks sometimes found dissimilar and others found similar. Unless there be a close relationship between the marks of decided cases and marks at issue in the case being heard, it is seldom helpful to an opinion for the courts to make comparisons and point out distinctions of fact.

In every case of contesting marks, the most helpful thing is to compare them, each with the other, and determine the question of likelihood of confusion (of course, under the rules of law as to which authorities are always helpful), in view of the nature of the goods to which they are, or are proposed to be, applied.

Distinction as to facts, either with respect to the marks or with respect to the goods, different from the distinctions here, we think, existed in all the cases cited by appellant, and those cases need not be reviewed.

It is our view that the Commissioner of Patents correctly applied the law to the facts of the instant case, and his decision is therefore affirmed.

Affirmed.

LENROOT, Associate Judge (dissenting).

I respectfully dissent from the conclusion in this case and the reasoning upon which such conclusion is based.

The examiner held that the term "Tufdri" was descriptive of a quality of the goods to which it was applied. Before the mark was passed to publication he required appellant to disclaim the term

apart from the mark shown, which was done.

That the term "Tufdri," applied to leather, is descriptive of the quality of leather, seems clear. This being so, I do not see how anyone could attach any importance to that portion of the mark as being in any way connected with the origin of the goods, and therefore any purchaser would be compelled to rely upon the portion of the mark not disclaimed to indicate origin.

I find nothing in the case of Tetley & Co., Inc., v. Bay State Fishing Co., 82 F.2d 299, 23 C.C.P.A., Patents, 969, contrary to the views above expressed.

Regarding the marks as a whole, I do not think there would be any confusing similarity, and therefore the decision of the Commissioner of Patents should, in my judgment, be reversed.